IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GWENDOLYN G. CARANCHINI,　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　*Plaintiff*,　　　　　)
　　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　　)　　　Case No. 19-cv-2067-CM-JPO
　　　　　　　　　　　　　　　　)
THE JOHNSON COUNTY　　　　　　)
DETENTION CENTER, et al.,　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　*Defendants*.　　　　)

## MEMORANDUM IN SUPPORT OF DISMISSAL

COME NOW Defendants Calvin Hayden, Sheriff of Johnson County, Kansas and the "Johnson County Detention Center," pursuant to D. Kan. Rule 7.1 and set forth the following argument and authority in support of their Motion to Dismiss. (Doc. 4).

### I.　　　Background

Plaintiff was arrested at 1:58 p.m. on Thursday, February 9, 2017, at the Johnson County, Kansas district courthouse based on a warrant for telephone harassment.  She was transported to, and incarcerated at, the Central Booking Facility that same day.  Plaintiff was released on bond the next evening, Friday, February 10, 2017 at 7:18 p.m.   She was detained for 29 hours and 20 minutes.

Plaintiff alleges the Detention Center or deputies intentionally violated her constitutional rights as follow:

1.  She was not brought before a judge and given the reason for her incarceration.[1]

2.  She was not given the opportunity to make bail and leave.[2]

3.  She was not told what the bail was for the charge or permitted to make a call to arrange for bail.[3]

---

[1] Doc. 1-3, *Complaint*, pp. 42-43, ¶78(a), ¶78(c).
[2] Doc. 1-3, p. 42, ¶78(b); p. 44, ¶78(h).

4.  She was not provided the medications she needed to have or access to any medical personnel.[4]

5.  Did not provide her with water or specific food.[5]

6.  She was put in a cell with bright lights.[6]

7.  She was denied the right to call her lawyer.[7]

8.  Deputies "humped her sexually" and dragged her across the "compound."[8]

9.  Caranchini's incarceration violated her Constitutional rights.[9]

10.  She seeks injunctive relief "for the reason that this Court has found that the Johnson County Detention Center violates the constitutional liberties of all citizens of the United States by its action and inactions as shown by what Caranchini was subjected to during her incarceration . . ."[10]

11.  She seeks injunctive relief ensuring detainees are afforded various constitutional rights.[11]

12.  She seeks injunctive relief for detainees being placed in cells for more than three hours, where "such retention [is] a violation of constitutional rights to be considered innocent until proven guilty.[12]

13.  She seeks a court order terminating the sheriffs in charge of each shift "for violating CARANCHINI's civil liberties."[13]

14.  She seeks injunctive relief for herself and future inmates so that their rights are preserved.[14]

15.  She alleges that incarcerated persons should not be subject to "conduct from the Sheriffs which does not violate their constitutional rights.[15]

---

[3] Doc. 1-3, p. 42-43, ¶78(c).
[4] Doc. 1-3, p. 43 ¶78(d); p. 43 ¶78(f); p. 44 ¶¶78(h), (i).
[5] Doc. 1-3, p. 43 ¶¶78(e), (f), (g); p. 44 ¶78(i).
[6] Doc. 1-3, p. 43 ¶78(g); p. 44 ¶78(i).
[7] Doc. 1-3, p. 44 ¶78(h).
[8] Doc. 1-3, p. 44 ¶78(i).
[9] Doc. 1-3, p. 50 ¶9.
[10] Doc. 1-3, p. 50, second paragraph.
[11] Doc. 1-3, p. 50 ¶1.
[12] Doc. 1-3, p. 52 ¶6
[13] Doc. 1-3, p. 53 ¶9.
[14] Doc. 1-3, p. 54.
[15] Doc. 1-3, p. 64 ¶104.

16. She alleges the sheriffs "felt free to treat to the inmates as they wished and did in fact treat the inmates, including Caranchini, as they wished in violation of the inmates constitutional rights;"[16]

17. She claims the sheriffs violated the constitutional rights of detainees.[17]

18. She alleges "[t]he conduct of the Sheriffs who were allegedly supervised by Hayden but in fact at all times acted in any way they wished, and thus violated the rights of those in the Detention Center including those of Caranchini who was denied edible food, medical care, the right to be free from ridicule and sexual taunts and humping, who was physically harmed for the entire time she was in the "jail" by the Sheriffs who acted in any manner they chose because they believed they could and did in fact do so."[18]

Plaintiff seeks unspecified actual damages, punitive damages and injunctive relief based upon these violations. For the reasons set forth below, Plaintiff's claims and the named defendants should be dismissed for failure to state a claim upon which relief may be granted.

## II.        Failure to State a Claim

### A.        Plaintiff's Claims against the Detention Center Should Be Dismissed

In Count I of her complaint, Plaintiff names the "Johnson County Detention Center" and blames it for numerous constitutional violations against her. This Defendant should be dismissed as it cannot be sued under Kansas law.

Absent a specific statute, subordinate governmental agencies do not have the capacity to sue or be sued. *Mashaney v. Bd. of Indigents' Def. Servs.*, 302 Kan. 625, 629 (2015); *Hopkins v. State*, 237 Kan. 601 (1985). No Kansas statute creates the Johnson County Detention Center or gives it the capacity to sue or be sued. *See Gray v. Kufahl*, 2016 WL 4613394 at *4 (D. Kan. 2016) (Lyon County Detention Center dismissed as it is not a suable entity); *Brown v. Saline County Jail*, 2010 WL 5139864 (D. Kan. 2010) (Kansas county jail is not a legal entity that can be sued; Saline County Jail dismissed); *Cooley v. McGovern*, 2009 WL 1542721 at *2 (D. Kan.

---

[16] Doc 1-3, pp. 64-65 ¶105(e).
[17] Doc. 1-3, p. 65 ¶106.
[18] Doc. 1-3, p. 66¶ 108.

2009) (Douglas County Correctional Facility not a legal entity that can be sued); *Chubb v. Sedgwick County Jail*, 2009 WL634711 at *1 (D. Kan. 2009) (Sedgwick County Jail not an entity that can be sued; subject to summary dismissal).

Accordingly, Plaintiff's Count I against the Johnson County Detention Center should be dismissed outright.

### B. Plaintiff's "Negligence" Claim against the Sheriff is just a Vicarious Liability Claim Based Upon Constitutional Violations of Subordinates and Does not therefore State a Claim

Plaintiff's Count II attempts to set forth a negligence claim against the sheriff based solely upon the underlying conduct of officers.[19]  However, Plaintiff makes no allegations of negligent conduct directly by the Sheriff relating to, or involving Plaintiff herself.  She makes no allegations of his knowledge or awareness about her incarceration, conditions or purported deprivations.  Therefore, Plaintiff's claim is necessarily based on vicarious liability. Where the underlying conduct consists of alleged constitutional violations by subordinates, these claims should be dismissed.

R*espondeat superior* is inapplicable in such situations to hold the sheriff vicariously liable. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 692 (1978) (creation of a federal law of *respondeat superior* would have raised all the constitutional problems associated with the obligation to keep the peace, an obligation Congress chose not to impose because it thought imposition of such an obligation unconstitutional). Simply put, a plaintiff cannot allege a sheriff is vicariously liable via *respondeat superior* where the underlying tort is a constitutional violation.  As recognized in *Becker v. Bateman*:

> Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability. As we recognized in *Monell* and have repeatedly reaffirmed, Congress did not intend municipalities to be held

---

[19] Doc. 1-3, pp. 61- 63

liable unless deliberate action attributable to the municipality directly caused a deprivation of federal rights.

2013 WL 5964422 at *5 (D. Utah 2013). *See also, Patrick v. City of Overland Park, Kan.*, 937 F. Supp. 1491, 1500 (D. Kan. 1996) (city cannot be liable merely for employing a violator of federal rights). As a result, it is a fundamental tent of federal tort law that individual state actors, as well as municipalities, may only be held liable for their own unconstitutional acts – acts committed, ordered or officially sanctioned. *Carr v. El Paso County, Colo.*, --- Fed. App'x ----, 2018 WL 6331600 at *3 (10th Cir. 2018); *Dodds v. Richardson*, 614 F.3d 1185, 1197 (10th Cir. 2010) (Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior).

Plaintiff's allegations referenced in Section I above, show her claims against the Sheriff are based upon underlying constitutional violations. Plaintiff should not be permitted to avoid well settled federal law and attach liability through *respondeat superior.* Accordingly, Plaintiff's Count III should be dismissed for failing to state a claim.

### C.    Dismissal of Unidentified Deputies - Statute of Limitations

Plaintiff's Count IV is against unnamed "Sheriffs" in the Detention Center for violations of her constitutional rights while incarcerated.[20] These unnamed deputies should be dismissed where the applicable statute of limitations has expired.

Plaintiff claims injury for the violation of her rights during her February 9 and February 10, 2017 incarceration. *Complaint*, p. 63. Actions for violation of these rights—either under federal law or state law—are limited to two years. *Lee v. Reed*, 2121 F. Supp. 3d 1263, 1269 (2016); *Auman v.* Kansas, 2018 WL 587232 at *4; K.S.A. §60-513(a)(4). In this case, the limitations period for Plaintiff's claims against these unnamed deputies expired on February 10,

---

[20] Doc. 1-3, *Complaint*, pp. 63-64, ¶¶ 102, 103.

2019.

Although Plaintiff filed her action within the limitations period, she nonetheless failed to identify the unnamed defendants within the limitations period.  Accordingly, any attempts by Plaintiff to replace the unnamed defendants with a new party would be futile. *Wesley v. Don Stein Buick, Inc.*, 1999 WL 232676 at *3 (D. Kan. 1999).  "As the Tenth Circuit has recognized, the replacement of a John Doe defendant with a named party constitutes the substitution of a party rather than a correct of a misnomer. *Wesley*, 1999 WL 232676 at *4 (citing *Watson v. Unipress, Inc.* 733 F.2d 1386, 1389 (10th Cir. 1984)); *Barron v. McGovern*, 2009 WL 223629 at *3 (D. Kan. 2009).  In that sense, claims against these unnamed "sheriffs" is like the filing of a new lawsuit. *Id.* at *4.

Importantly, amended claims replacing an unnamed defendant with a named party does not relate back to the date on which the complaint was filed because the naming of these sheriffs as defendants "does not constitute a mistake in identification." *Id.* at 4 *(citing *Henry v. FDIC*, 168 F.R.D. 55, 58 (D. Kan. 1996); *Alexander v. Beech*, 952 F.2d 1215, 1226-27 (10th Cir. 1991)). The United States Court of Appeals for the Tenth Circuit as well as judges of this District have routinely held that the replacement of an unknown or 'John Doe' defendant with a named party fails to relate back under Fed. R. Civ. P. 15(c)(1)(C), as such amendments constitute a substitution of a party rather than the correction of a misnomer." *Lewis v. Wheeles*, 2008 WL 2944903 at *2 (D. Kan. 2008).

Plaintiff cannot take judgment against an unidentified group of unmade officers.  Even if Plaintiff attempts to amend to add specific defendants, her attempts would be after the statute of limitations has expired, would not relate back and would be futile. *Wesley* at *4.  These unnamed sheriffs should therefore be dismissed.

### III.    Dismissal of Underlying Constitutional Violations

Plaintiff's complaint is unquestionably founded upon multiple alleged constitutional violations.  To the extent the Court does not dismiss all of her claims for the reasons set forth in Section II, above, Defendant Hayden sets for the following argument and authority for dismissal of the underlying constitutional claims:

### A.    General Failure to State a Claim Against the Individual Officers.

Plaintiff's Count VI seeks compensation based upon the violation of her constitutional rights during incarceration:

> "The conduct of the Sheriffs who were allegedly supervised by Hayden but in fact at all times acted in any way they wished, and thus violated the rights of those in the Detention Center including those of Caranchini who was denied edible food, medical care, the right to be free from ridicule and sexual taunts and humping, who was physically harmed for the entire time she was in the "jail" by the Sheriffs who acted in any manner they chose because they believed they could and did in fact do so." Doc. 1-3, *Complaint*, p. 66¶ 108.

> She alleges that incarcerated persons should not be subject to "conduct from the Sheriffs which does not violate their constitutional rights.  Doc. 1-3, p. 64, ¶104.

> The Sheriffs "felt free to treat to the inmates as they wished and did in fact treat the inmates, including Caranchini, as they wished in violation of the inmates constitutional rights;" Doc 1-3, Complaint, pp. 64-5, ¶105(e).

> Sheriffs violated the constitutional rights of detainees. Doc. 1-3, p. 65, ¶106.

> Caranchini seeks actual damages from the Sheriffs for their actions in the detention center. Doc. 1-3, p. 66, ¶109.

Plaintiff's Count IV is, in effect, a §1983 claim or at least requires the establishment of an underlying §1983 violation.

Accordingly, the unnamed sheriffs should also be dismissed for failing to allege any specific personal involvement of any specific officer (be it by a John Doe basis or by name). Liability must be predicated on an individual defendant's personal involvement in the constitutional violation.

> Because § 1983 ... [is a] vehicle[ ] for imposing personal liability on government officials, we have stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants.  It is particularly important that plaintiffs make clear exactly who is alleged to have done what to whom, ... as distinguished from collective allegations.  When various officials have taken different actions with respect to a plaintiff, the plaintiff's facile, passive-voice showing that his rights "were violated" will not suffice.  Likewise insufficient is a plaintiff's more active-voice yet undifferentiated contention that "defendants" infringed his rights.

*Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013).  When a complaint merely lists a group of defendants, but fails to distinguish the acts attributable to each defendant, it is impossible for any of the defendants to ascertain the unconstitutional conduct they allegedly committed.  *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008).  To avoid dismissal of unnamed defendants, Plaintiff must "provide[ ] an adequate description of some kind which is sufficient to identify the person involved so process eventually can be served."  *Roper v. Grayson*, 81 F.3d 124, 126 (10th Cir. 1996).  "[A] defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established." *Porro*, 624 F.3d at 1327 (emphasis in the original).

In the present case, Plaintiff does not name a single individual involved in her detention.  She does not bother to state any particular "Doe" officer took a specific action against her that cause her injury or damage.  She makes no allegations against any individual officer or detention official.

To the contrary, Plaintiff documents a litany of unacceptable conditions and events during her incarceration and collectively alleges that "sheriffs" and engaged in unconstitutional conduct.  Plaintiff's allegations are markedly insufficient to state a claim against any individuals under Section 1983 or to state a claim *based upon* the underlying violations of her constitutional rights.  Therefore, as to Count IV, her claims relating to her detention at the jail by a class of unnamed officers should be dismissed.

B.      **Arrest and Detention without Being Advised of the Charge**

Plaintiff complains she was arrested and subject to conditions of confinement for approximately 36 hours without being told why, or without being advised of the criminal charge against her.[21]  Where Plaintiff fails to allege she had been arraigned prior to this incarceration, she does not plead a cause of action and these claims should be dismissed.  Moreover, and just as important, Defendants are compelled to point out that an exhibit in Plaintiff's own pleadings, submitted in a recently dismissed federal case in Missouri, irrefutably show she was fully advised of the charges and the basis for her arrest by a district court magistrate judge immediately prior to her arrest on February 9, 2018.  Thus, in the alternative, judgment should be entered against her on these claims.

1.      **Failure to Allege Adversarial Proceedings**

Plaintiff alleges she was not brought before a judge to be advised of pending criminal charges against her, or why she was being detained during her incarceration.  Presuming *arguendo*, this were true, she nevertheless fails to state a claim for relief.  The Court should therefore dismiss this claim.

Judge Vratil analyzed this same issue in *Ledbetter v. Bd. of Cty. Comm'rs of the Cty. of Shawnee*, 2001 WL 705806 at *2 (D. Kan. 2001).  Ledbetter was a pretrial detainee at the Shawnee County Correctional Facility who alleged officers violated his rights by refusing to tell him why he was being detained and by refusing to let him call a lawyer.  Judge Vratil found the plaintiff failed to state a cause of action under 1983 and dismissed the claim.  This Court should do likewise.

The Sixth Amendment, applicable by way of the Fourteenth Amendment, provides an accused the right to be informed of the nature of the charge against her.  *Ledbetter at *2* (citing

---

[21] *See e.g.,* Doc. 1-3, *Complaint*, p. 31 ¶39; p. 35 ¶54 [36 hours]; p. 38 ¶66 [36 hours]; pp. 42-43, ¶78(a), ¶78(c).

*Kladis v. Brezek*, 823 F.2d 1014, 1018 (7th Cir. 1987)).  However, the right to be informed does not attach until "at or after the initiation of adversary proceedings—whether by way of formal charges, preliminary hearing, indictment, information or arraignment."  *Id.* at *2 (citing *Kirby v. Illinois*, 406 U.S. 682, 689 (1972); *United States v. Gouveia*, 467 U.S. 180, 188 (1984)). Similarly, the Supreme Court has pointed out that "[w]hile it is assuredly good practice to inform a person of the reason for his arrest at the time he is taken into custody, we have never held that to be constitutionally required." *Devenpeck v. Alford*, 543 U.S. 146, 155 (2004).

Under Kansas law, a defendant is advised of the criminal charges during arraignment through the reading of a complaint, information or indictment. K.S.A. § 22-3205.  The defendant is then provided a copy of the charging document and asked to plead.  *Id.*  In this case, Plaintiff has failed to allege any adversary proceeding against her, either before, during or after her detention.   To the contrary, it appears Plaintiff alleges she was arraigned at the end of her incarceration, when her sister provided bail money on the evening of February 10, 2017.[22] Like *Ledbetter*, Plaintiff's claims regarding any failure of being informed of her of charges should be dismissed.

### 2.    Plaintiff Was Advised of the Pending Criminal Charge by a Judge

Aside from her pleading failure, Plaintiff's claims on this issue must be dismissed where she now pleads that she was in fact informed of the charges against her when she was arrested: "The Court informed CARANCHINI she was being arrested on a separate legal charge brought by the PECKS."[23]  Where Plaintiff admits her Sixth Amendment rights were satisfied, any claim based on being advised of her criminal charges should be dismissed.

---

[22] Doc. 1-3, p. 8 ¶4.
[23] Doc. 1-3, p. 27-28 ¶27.

Moreover, Defendants are again obligated to inform the Court that Plaintiffs own exhibits in a related case irrefutably show she was fully advised of the basis for her arrest and the specific charges by a magistrate judge as she was being arrested.  Specifically, Plaintiff was arrested at the Johnson County courthouse on February 9, 2017 at 1:58 p.m. immediately after she defended herself at a protection from stalking hearing.[24]  As that hearing drew to a close, the magistrate judge fully explained to Ms. Caranchini that officers were there to arrest her on a warrant for telephone harassment.  The certified transcript of that hearing captured this explanation:[25]

| The Court: | Unfortunately there is another lawyer that seems to think that you have crossed the line.  There is a warrant for your arrest and the Sheriff will take you into custody. |
|---|---|
| Ms. Caranchini: | What? |
| The Court: | There is a warrant for your arrest. |
| Ms. Caranchini: | For what? |
| The Court: | Harassment by telephone. |
| Ms. Caranchini: | By whom? |
| The Court: | Him. |
| Ms. Caranchini: | This lawyer. |
| The Court: | No, the plaintiff. |
| Mr. Peck: | By me. |
| Ms. Caranchini: | No, there is only this.  There is no other - - |

---

[24] Doc. 1-3, p. 8 ¶4; p. 27 ¶¶23, 27.

[25] This certified transcript is attached as Exhibit A to the Defendant's prior memorandum in support of dismissal, Doc. 25, in U.S. D. Kan. Case No. 18-2249 and is incorporated herein by reference.  It was previously filed by Plaintiff as an exhibit (Doc. 3-1) to her complaint in *Caranchini v. Peck et al.*, U.S. W. D. Mo. 17-00667 (August 11, 2017) (Dismissed for lack of jurisdiction).  The Court may take judicial notice of this exhibit for purposes of considering the pending motion to dismiss.  *United States v. Ahidley,* 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (Court may take judicial notice of publicly filed records in other federal courts concerning matters that bear directly upon the disposition of the case at hand); *St. Louis Baptist Temple v. F.D.I.C.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (same).  Defendants hereby request the Court take judicial notice of this transcript.

| | |
|---|---|
| The Court: | Stop arguing with me - - |
| Ms. Caranchini: | I'm sorry your honor. |
| The Court: | - - and telling me I don't know what I'm talking about.  I am looking right here.  It is case 17DV111, State of Kansas versus Gwendolyn Caranchini, and it is filed on the basis of an affidavit  let's see hang on a minute. |
| Ms. Caranchini: | The only thing - - |
| The Court: | No.  That's why I'm telling you right now, because now -- everybody just sit still.  Where am I? |
| Ms. Caranchini: | I - - |
| The Court: | Don't speak.  On December 16th, Richard Peck and his ex-wife, Lola Peck, made reports of phone harassment by Gwendolyn Caranchini.  Richard Peck and Lola Peck were recently divorced, yet have resumed living together in Edgerton County.  So you filed this, sir, you made reports and the district attorney took those reports and filed a harassment by telephone charge against the plaintiff – against the defendant and that their Lieutenant B. Barnhart, Badge No. 128, filed the affidavit with the district attorney's office.  The district attorney's office decided that it was in fact sufficient probable cause and on January 23rd a criminal complaint was filed against the defendant.  Just stop making that noise, ma'am.  I am telling you what is going on and you are going to listen to it.  There is not anything you can do about it. |
| Ms. Caranchini: | Your Honor, on December 24th I saw him, Mr. Peck. |
| The Court: | Ma'am, I am not going to argue with you about this.  A different district attorney and law enforcement officer -- a district attorney, officer, and a judge all decided that there was sufficient information to file a complaint for this action.  I'm trying to figure out -- bond is set at $3,500 cash or surety with the following conditions.  So you will go with this deputy to be processed for that warrant… You'll need to talk -- if you can't afford to hire an attorney, they'll appoint one for you. |
| Ms. Caranchini: | What's the problem? |
| Deputy: | I've got to put you in custody. |
| Ms. Caranchini: | What? |
| The Court: | Ma'am, yes, you are going to -- he is going to put those cuffs on you. |
| Deputy: | Put your hands out. |
| Ms. Caranchini: | This is --. |

| | |
|---|---|
| Deputy: | You're under arrest, do you understand? |
| Ms. Caranchini: | No, I don't understand. |
| The Court: | Ma'am, you are under arrest on this charge of telephone harassment and you will do as the officer tells you until you are in front of a judge. |
| Ms. Caranchini: | Am I going in front of a judge today? |
| The Court: | I have no idea. |
| Ms. Caranchini: | This is incredulous.<br>(The proceedings concluded). |

This exchange conclusively refutes Plaintiff's allegations about not being informed of the charges against her, regardless of whether she was brought before a separate judge or provided anything in paper. Plaintiff knew full well the case number, the circumstances and the specific charge prior to being arrested. The magistrate judge explained it to her in detail on the record. This Court should not permit Plaintiff to proceed in this case upon knowingly false, contradictory allegations. Even assuming, *arguendo*, that *Ledbetter* would somehow not apply, the Court should fairly enter judgment against Plaintiff on this claim.

## F. Denied the Opportunity to Pay Bail or Post a Bond

Plaintiff similarly alleges she was not given an opportunity to make bail and leave.[26] This claim should be dismissed for the reasons set forth in Section III.A, above. Simply alleging a right was denied and concluding that a class of unspecified individual defendants are culpable, is insufficient to state a claim under § 1983. *Brown v. Montoya*, 662 F.3d 1151, 1165 (10th Cir. 2011) (complaint referring to actions of defendants as one large group is insufficient to state a 1983 claim by alleging how a particular defendant might be individually liable for constitutional deprivations). Accordingly, this claim should be dismissed on this shortcoming alone.

---

[26] Doc. 1-3, p. 42 ¶78(b); p. 44 ¶78(h).

Plaintiff fails to state a claim for additional reasons. She fails to allege any bond had been set during her 36 hour incarceration which would enable her to provide funds and agree to terms. She fails to allege that—if bond *had* been set during her incarceration—she was financially able to post bond. She fails to allege that—if bond *had* been set—that she was able to comply with other terms or conditions of the bond. She fails to allege that any third person was able and willing to post bond during her detention. Without such specific allegations, Plaintiff has failed to state a claim upon which relief may be granted. Accordingly, this claim should likewise be dismissed.

### G.    Denial of Medical Care

Plaintiff claims she was denied medications she needed to have or to access any medical personnel during her detention.[27] As a preliminary matter, this claim should be dismissed for the reasons noted in Section III.DA above: Plaintiff completely fails to name or identify any individual officer responsible for this purported constitutional deprivation. To allege a constitutional violation for lack of medical care, a plaintiff must set out facts establishing a deliberate indifference to a serious medical need on the part of a specific individual actor. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Olsen v. Layton Mills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002) (applying the same standard to the treatment of pretrial detainees). "Deliberate indifference" is defined as knowing and disregarding an excessive risk to an inmate's health or safety. *Farmer*, 511 U.S. at 827.

In this case, Plaintiff has failed to name a single officer and allege plausible facts showing that any individual defendant knew of, and disregarded an excessive risk to Plaintiff's health or safety. Plaintiff's allegations of denial of medical care are therefore inadequate and subject to dismissal for failure to state a claim. *Pahls v. Thomas*, 718 F.3d at 1255; *Robbins v.*

---

[27] Doc. 1-3, p. 31 ¶41; pp. 31-32 ¶42, p. 35 ¶54; p. 36 ¶57; p. 37 ¶ 58; p. 43 ¶¶ 78(d), (f); p 44 ¶¶78(h), (i).

*Oklahoma*, 519 F.3d at 1250; *Johnson v. Corizon Health, Inc.*, 2018 WL 1992393 at \*4 (D. Kan. 2018).

Dismissal is further appropriate where Plaintiff merely alleges a disagreement with the medical care and medication offered.  In this case, a close review of Plaintiff's own allegations shows she did in fact receive medical care, albeit not up to Plaintiff's expectations:

1.  She was seen by a rude, incompetent nurse. (Doc. 1-3, p. 36 ¶57).

2.  Someone who claimed to be a nurse showed up at her cell with medication similar to what Plaintiff claimed she was taking, but Caranchini refused. (Doc. 1-3, p. 37 ¶58).

3.  A purported nurse came to Plaintiff's cell and measured her blood sugar level and wanted Plaintiff to take medication. (Doc. 55, ¶84).

4.  The nurse came to Plaintiff's cell on one or two more occasions.  (Doc. 1-3, p. 55 ¶85)

5.  A psychologist or social worker came to her cell door and talked to her. (Doc. 1-3, p. 44 ¶78(j)).

Plaintiff's additional allegations confirm the treatment and medication she was offered wasn't the exact same brand or dosage that she had been prescribed previously:

1.  She was never given any of *her* drugs, including insulin, with does and timing of the drugs. (Doc. 1-3, p. 8 ¶3);

2.  She never received a single drug on her medical list. (Doc. 1-3, p. 31 ¶42);

3.  She was denied a right to be given, or was not given *her* medication, or *her* insulin shots. (p. 34, ¶50, p. 35 ¶54);

4.  The rude nurse "never gave her the medicines on the list" she had given the Sheriff. (Doc. 1-3, p. 36 ¶57).

5.  She never received the medications on her medication list.  (Doc. 1-3, p. 56 ¶86).

In the interests of justice and for the benefit of the Court, Defendants are obligated to show that Plaintiff's claims are, in fact, a mere disagreement with medical care:

1. On the morning of February 10, 2017 at approximately 6:33 a.m., a nurse was at Plaintiff's cell attempting to check Plaintiff's blood sugar and administer insulin.  (Exhibit B-1, Axon Body 2 Video 2017-02-10-0633 at 00:02 - 00:18).[28]

2. The nurse advises Plaintiff that medical staff was waiting on verification of her prescriptions, and reminded her that she did receive insulin the previous day (February 9, 2017).  (Exh. B-1, at 00:45 – 01:15).

3. Plaintiff acknowledges (or at least does not deny) receiving insulin the previous day, right before she allows the nurse to check her blood sugar level.  (Exh. B-1, 01:08 – 01:19).

4. Instead, Plaintiff protests that the insulin she received was not the "long term acting insulin" that she wanted.  (Exh. B-1, at 01:14).

5. In response, the nurse explains that the insulin type is what the doctor ordered for Caranchini, and that they don't administer insulin like regular, private medical providers.  (Exh. B-1, 01:35).

6. Following the explanation, Plaintiff unhappily agrees to take the insulin. However, Plaintiff then threatens suit if the insulin is given by injection.  (Exh. B-1, 02:14 – 02:29).

7. The nurse advises her that she considered Plaintiff's threat a refusal to accept the insulin, packed her equipment and returned the medical unit.  (Exh. B-1, 02:29).

The video footage merely confirms Plaintiff's allegations in her instant complaint: she did not get the type of medication she wanted.  However, an inmate's mere disagreement with medical care, including the type or dosage of medication, cannot support the requisite deliberate indifference to establish a denial-of-medical-care claim. *Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) (plaintiff's allegations indicate not a lack of medical treatment, but a disagreement with the doctor's medical judgment in treating a condition with a certain medication rather than others); *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992) ("Plaintiff's belief that he needed additional medication, other than that prescribed by the treating physician, as well as his contention that he was denied treatment by a specialist is ... insufficient to establish a constitutional violation."); *Hood v. Prisoner Health Servs., Inc.*, 180 F. App'x 21, 25, 2006 WL 1230688, at *2 (10th Cir. May 9, 2006) (non-narcotic medication offered as an

---

[28] The references in Paragraphs 1-7 are to Exhibit B-1 of Document 25, Defendant Hayden's Memorandum in Support of Dismissal, filed in Ms. Caranchini's prior case, U.S. D. Kan. No. 18-2249.  Defendant incorporates that exhibit herein by reference.

alternative to the narcotic medication prescribed prior to detention, a constitutional violation was not established even though plaintiff disagreed with the treatment decisions made by prison staff).

Taken as true, Plaintiff's own allegations confirm she was seen by a nurse and another medical care provider at least three or four times in 36 hours; she was offered medication for her condition; and she refused the medication because it wasn't what she wanted.  Plaintiff has not pled deliberate indifference necessary to support a denial of her basic civil rights to medical care and this claim should be dismissed.

**H.     Plaintiff denied the right to call her attorney or others.**

Plaintiff conclusively alleges she was denied the right to make a telephone call to her attorney or others, all in violation of her Constitutional rights."[29]  This claim is deficient for two reasons: she fails to name or otherwise identify any individual defendant who participated in the alleged unconstitutional conduct; and she has no constitutional right to make a phone call prior to arraignment.  For these reasons, these claims should be dismissed.

**1.     Failure to name or Identify Defendants**  - When a complaint simply lists a group of defendants, but fails to distinguish the acts attributable to each individual, it is impossible for any of the defendants to ascertain the unconstitutional conduct they allegedly committed.  *Robbins*, 519 F.3d at 1250.  This is especially true where, as here, the allegations involve government actors in their individual capacities.  *Id.*, at 1249-1250.  Accordingly it is "particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom* to provide each individual with fair notice as to the basis of the claims against him or her as distinguished from collective allegations against the state.  *Id.*, at 1250.  In this case, Plaintiff fails to name or otherwise attempt to identify any individual

---

[29] Doc. 1-3, p. 31 ¶41; p. 32 ¶44; p. 34 ¶50; p. 43 ¶78(c); p. 44 ¶78(h); p.

deputies.  She fails to allege any facts sufficient to put any individual officer on notice of this

claim.  Rather, Plaintiff's allegations are just like *Robbins*: she vaguely alleges that "sheriffs"

denied her this right on numerous, unspecified occasions during her incarceration with no factual

details whatsoever.  This is precisely the level of pleading held insufficient by this Court and the

Tenth Circuit.  *Robbins*, at 1252 (Robbins failed to state a claim for relief in part due to the

deficiencies in providing notice to the defendants as to the actions alleged grounds for their

liability); *Glasser v. City & Cty. of Denver, Colo.*, 557 F. App'x 689, 2014 WL 308552 at *10

(10th Cir. 2014); *Bark v. Chacon*, 504 F. App'x 741, 745, 2012 WL 6033597 at *4 (10th Cir.

2012).  The Court should follow the Tenth Circuit and dismiss this claim.

      **2.**      **No Right to a Call Prior to Arraignment** -  "The Sixth Amendment

(made applicable to states by the Fourteenth Amendment) provides an accused the right to be

informed of the nature of the charges against him and the right to an attorney with the auxiliary

right to call an attorney." *Ledbetter*, 2001 WL 705806 at *2 (citing *Kladis v. Brezek*, 823 F.2d

1014, 1018 (7th Cir, 1987)).  However, these rights do not attach until adversarial proceedings

have been initiated.  *Id.*  As stated above, Ms. Caranchini fails to allege she had been arraigned

during this brief 36-hour period.  She therefore has not pled sufficient facts to establish the right

to call an attorney, and does not state a claim.  *See Fillmore v. Ordonez*, 829 F. Supp. 1544, 1563

(D. Kan. 1993) (no right to call counsel prior to arraignment), *aff'd*, 17 F.3d 1436 (10th Cir.

1994); *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986) (no Sixth Amendment

right to call attorney before formal charges); *State Bank of St. Charles v. Camic*, 712 F.2d 1140,

1144 (7th Cir. 1983) (no right to telephone call before accusatorial questioning or adversarial

proceedings), *cert. denied*, 464 U.S. 995 (1983); *see also Martin v. Tyson*, 845 F.2d 1451, 1458

(7th Cir. 1988) (pretrial detainees' due process rights not violated by limitations on telephone

access).  Ms. Caranchini's allegations that she was denied the right to make a phone call fail to state a claim and should be dismissed from this action.

## I.        Remaining Conditions of Confinement Claims

Plaintiff's remaining claims allege several conditions of confinement that violated her constitutional rights while she was held at the detention center.[30]  Plaintiffs must satisfy two conditions to establish a conditions of confinement claim, consisting of an objective and a subjective component. *Lewis v. McKinley Cty. Bd. Of Comm'rs*, 425 F. App'x 723, 726-27, 2011 WL 2194013 at *3 (10th Cir. June 7, 2011) (citing *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001)).  To satisfy the objective component, the plaintiff must allege facts to demonstrate that the deprivation was "sufficiently serious."  *Id.* at 727, *3 (quoting *Fogle v. Pierson*, 435 F.3d 1252, 1260 (10th Cir. 2006)).  The subjective component requires the plaintiff to show that defendants knew of and disregarded an excessive risk to his health or safety.  *Murray v. Edwards Cty. Sheriff's Dep't*, 248 F. App'x 993, 997, 2007 WL 2827723 at *3 (10th Cir. 2007).  Applying these standards to Plaintiff's condition of confinement claims that follow, Ms. Caranchini fails to allege facts about her conditions that show a deprivation of a constitutional right under the Fourteenth Amendment.

**1.  Adequate Food/Diabetic Meal -** Ms. Caranchini alleges she was denied food during her incarceration.  Notably, she does not allege that she was denied any food, but just that she was given some food which she could not eat because of her diabetic condition.[31]

**a.  Objective Component** – Considering that she was provided food, the brief period of time she was detained, and her allegations that she received medical care, Plaintiff

---

[30] To be clear, Plaintiff's allegations establish she was detained upon arrest and never convicted.  Thus her remaining conditions claims are Fourteenth Amendment conditions claims.

[31] Doc. 1-3, p. 31 ¶42; p. 32 ¶¶ 44, 46; p. 33 ¶48; p. 34 ¶50; p. 37 ¶60; p. 38 ¶66; p. 43 ¶78(g); p. 60 ¶94(f)(6); p. 66 ¶108.

does not allege a sufficiently serious deprivation to state a claim under the objective component of a Fourteenth Amendment conditions claim.

Detention centers are required to provide inmates with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and wellbeing of the inmates who consume it." *Ramos v. Lamm*, 639 F.2d 559, 570-71 (10th Cir. 1980). "The [E]ighth [A]mendment[32] assures prisoners a medically and nutritionally sound diet; it does not guarantee a pleasant culinary experience." *Frazier v. Dep't of Corr.*, 1997 WL 603773 at *1 (10th Cir. 1997) (citation omitted). However, Defendants emphasize that "[t]here is … a *de minimus* level of imposition with which the Constitution is not concerned." *Bell v. Wolfish*, 441 U.S. 520, 539 n. 21 (1979). Time exposed to certain cell conditions is a significant factor courts consider in their analysis of these issues. *Id.*, at 543; *see also*, *Hutto v. Finney*, 437 U.S. 678, 686-87 (1978) ("A filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks and months").

Taking her allegations as true, Ms. Caranchini claims she was held for 36 hours at a Johnson County detention center without a diabetic meal. As demonstrated above in Section III(G) (medical care), Plaintiff alleges she was seen by a nurse two or three times and offered medication. In fact, Exhibit B-1 to Defendant's prior memo in support of dismissal[33] shows a nurse checked her blood sugar levels and offered insulin prior to letting her be served with a sack meal.

Assuming her allegations are true, being subjected to "inedible" food for such a short period of time does not give rise to a constitutional claim. *See e.g.*, *Bates v. Morris*, 2016 WL 1166371 at *4 (W.D. Penn. 2016) (diabetic inmate denied two meals, held not deliberate

---

[32] Although Plaintiff's conditions of confinement claims fall under the Fourteenth Amendment, the Eight Amendment standard provides the benchmark for such claims. *Craig v. Eberly* 164 F.3d 490, 495 (10th Cir. 1998).
[33] See footnote 284, above regarding the video camera footage field with the Court.

indifference that deprived inmate of minimal civilized measure of life's necessities); *Zanders v. Ferko*, 2011 WL 2938133 at *2 (3rd Cir. 2011) (diabetic inmate denied three meals over two day period held insufficient to rise to the level of a constitutional violation; dismissal affirmed); *Crowley v. Meyers*, 2002 WL 31180743 at *1 (N.D. Ill. 2002) (Inmate denied diabetic meal trays held not a wanton infliction of unnecessary pain); *Frazier v. Department of Corrections*, 1997 WL 603773 (10th Cir. 1997) (Diabetic inmate was provided food, but not a with a special diabetic meal tray; held not a constitutional violation).

Defendant also emphasizes that Plaintiff fails to allege any significant harm specifically tied to this purported deprivation, other than nightmares and she had no normal blood sugars for a week.[34] This lack of serious harm supports the conclusion that the temporary deprivation of a diabetic meal tray was not objectively serious enough to be considered the denial of the minimal civilized measure of life's necessities.  Plaintiff's meal claims should therefore be dismissed for failing to state an objectively serious deprivation.

**b.  Subjective Component** – Plaintiff's meal claims fails under the subjective component as well.  A prison official is not liable for unsafe conditions of confinement "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 834.  As set forth above in Section III.A, Plaintiff fails to name or provide sufficient facts to plausibly support a showing of individual liability against anyone else, let alone plausible facts showing any particular individual personally knew of and intentionally disregarded a threat of serious harm to Plaintiff.  Thus her food-related claims should be dismissed for lack of any allegations to support an objective deprivation.

---

[34] Doc. 1-3, p. 37 ¶60; p. 45 ¶79(d).

     2.   **Denial of Water -** Ms. Caranchini also alleges she was denied water for the last ten hours or so hours while in custody.[35]  Her claim is deficient for much the same reason that her diabetic meal claim fails.

     a.   **Objective Component** – The Constitution "does not mandate comfortable prisons" and prison conditions may be "restrictive and even harsh." *Rhodes v. Chapman*, 452 U.S. 337, 347, 349 (1981).  In *Brown v. Gray*, the District Court of Kansas found that Brown's deprivation of water for a couple of hours was insufficient to state a claim under the Eighth Amendment.  2011 WL 6091738, at *21 (D. Kan. 2011) (citing *Hartsfield v. Vidor*, 199 F.3d 305, 310 (6th Cir. 1999) ("deprivations of fresh water and access to the toilet for a 20–hour period, while harsh, were not cruel and unusual punishment"); *see also Gunn v. Tilton*, 2011 WL 1121949 at *4 (E.D. Cal. 2011) (holding that outside detention for approximately 6 hours without water and 3–4 hours without restrooms was not sufficiently serious to support an Eighth Amendment claim); *Hernandez v. Battaglia*, 673 F. Supp. 2d 673, 676–78 (N.D. Ill. 2009) (holding an inmate handcuffed in a prison yard without access to water, food, or toilets in 80–85 degree temperatures for up to five hours was not an Eighth Amendment violation); *Minifield v. Butikofer*, 298 F. Supp. 2d 900, 904 (N.D. Cal. 2004) (holding five-hour deprivation of water was not an Eighth Amendment violation).  Conversely, an inmate's allegation that he was deprived of water for three days was found to be a sufficiently serious condition to implicate constitutional protection. *Purkey v. McKune*, 2004 WL 2413455 at *4 (D. Kan. 2004).

     Even if true, Ms. Caranchini's placement in a cell without access to water for approximately ten hours does not rise to the level of a sufficiently serious condition to warrant constitutional protection.  Although uncomfortable or irritating, it would not deny Plaintiff a

---

[35] Doc. 1-3, p. 37 ¶6; p. 33 ¶¶ 47, 48; p. 44 ¶78(i) [eventually put into a cell with no water].

minimal civilized measure of one of life's necessities.  *Waterman v. Cherokee Cty. Jail*, 2018 WL 2046911 at *3 (D. Kan. 2018).

Defendants must also point out that there is no constitutional violation if the condition was reasonably related to a legitimate government objective.  *Bell v. Wolfish*, 441 U.S. at 538.  Plaintiff's own factual allegations establish she was yelling incessantly, smeared peanut butter on her cell window, covered her cell window with toilet paper, and then refused directions to uncover her window.[36]  This led to detention staff removing her from the cell and placing her in a safety cell.[37]  Staff had a legitimate interest in relocating Plaintiff to a safety cell to more closely monitor Ms. Caranchini's agitated behavior and medical conditions.  Placing her in a safety cell accomplished these goals.  Even if her allegations are true, the incidental deprivation of water for approximately ten hours does not amount to punishment.  Thus, Plaintiff fails to state a claim upon which relief may be granted.

**b.  Subjective Component** – Plaintiff's denial of water claim also fails under the subjective component.  Plaintiff also fails to name or provide sufficient facts to establish any showing of individual liability against any other officer or detention-related defendant.  Thus there are no allegations to give rise to any plausible conclusion that any particular individual personally knew of, and intentionally disregarded, a threat of serious harm to Plaintiff through the denial of providing water for eight to ten hours.  Plaintiff's denial of water claim should be dismissed where no subjective deprivation has been alleged.

**3.  Sexual Assault -** Ms. Caranchini alleges that she was sexually assaulted or humped when officers forcibly removed her from a cell and put her in a safety cell.[38]

---

[36] Doc. 1-3, p. 34 ¶¶50, 51; p. 35 ¶51; p. 35 ¶53; p. 32 ¶46; p. 64 ¶96; p. 102 ¶196; p. 115 ¶218(j)
[37] Doc. 1-3, p. 32-33 ¶¶ 46-48; p. 44 ¶78(i).
[38] Doc. 1-3, p. 32 ¶ 44; p. 32-33 ¶46; p. 44 ¶78(i).

As a pretrial detainee, Plaintiffs claim of sexual assault falls under the protections of the Due Process Clause of the Fourteenth Amendment. *Bass v. Pottawatomie County Public Safety Center*, 425 F. App'x 713, 719, 2011 WL 219835 at *5 (10th Cir. 2011) (citing *Frohmader v. Wayne*, 958 F.2d 1024, 1028 (10th Cir. 1992)).   Her Fourteenth Amendment conditions of confinement claim is evaluated under the same standards utilized under the Eighth Amendment. *Id.* (Eighth Amendment conditions of confinement analysis for detainee's assault clam) (citing *Craig v. Eberly*, 164 F.3d at 495); *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998) (Eighth Amendment conditions of confinement analysis for sexual assaults); *Hovater v. Robinson*, 1 F.3d 1063, 1066 (10th Cir. 1993) (proper standard for Eighth Amendment conditions of confinement claim such as sexual assault by deputy is deliberate indifference).

In turn, the applicable Eighth Amendment standard requires allegations to plausibly establish that: (1) from an objective standpoint, the deprivation suffered from the offending conduct was sufficiently serious; and (2) that the defendant had a sufficiently culpable state of mind or was "deliberately indifferent" to the inmate's safety.  *Farmer v. Brennan*, 511 U.S. 825, 833, (1994).

> **a.   Objective Component; Sufficiently Serious** – The objective component of the analysis requires Plaintiff to assert facts showing that she was subjected to conduct or physical force that rose to the level of cruel and unusual punishment.  *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009); *Wilson v. Seiter*, 501 U.S. 294 (1991).

Without question, sexual abuse is repugnant to contemporary standards of decency and allegations of sexual abuse can satisfy the objective component of an Eighth Amendment excessive force claim. *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008); *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003).  However, Defendants stress that not every malevolent

touch by a prison guard gives rise to a federal cause of action.  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *see Martin v. Creek Cnty. Jail*, 2010 WL 4683852 at *4 (N.D. Okla. 2010) ("The Eighth Amendment prohibition … necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.").  With regard to allegations of sexual touching, the Tenth Circuit and several district courts have consistently dismissed sexual assault claims similar to those alleged by Plaintiff at the motion-to-dismiss stage, drawing the line "between sexual conduct that violates the Eighth Amendment, and that which, while still repugnant, does not rise to the level of a constitutional claim." *Broadus v. Timme*, 2012 WL 639310 at *6 (D. Colo. 2012) (report and recommendation adopted, 2012 WL 638797 (D. Colo. 2012)).  As to the latter category, courts have concluded that inappropriate touching and sexual advances are not so "objectively, sufficiently serious" as to "demonstrate a use of force of a constitutional magnitude." *Broadus*, 2012 WL 639310 at *6 (quoting *Joseph v. U.S. Fed. Bureau of Prisons*, 2000 WL 1532783 at *1 (10th Cir. 2000)).

In *Joseph*, the inmate alleged a prison employee touched him several times in a suggestive manner and that she exposed her breasts to him.  The Tenth Circuit affirmed dismissal of plaintiff's claims for lack of an objectively sufficient violation.   In *Rhoten v. Werholtz*, a prison guard was alleged to have slammed the inmate against the wall, squeezed his nipples, squeezed his buttocks, and pulled on his testicles causing a great deal of discomfort and pain. 243 F. App'x 364, 365, 2007 WL 1765538, at *1 (10th Cir. 2007).  The Tenth Circuit held that, "even accepting Rhoten's allegations as true, ... [the defendant's] use of force does not state an Eighth Amendment violation.  Rather, it was de minimis." *Id.*, at 367, 2007 WL 1765538 at *2.

In *Broadus*, the plaintiff's factual allegations included that a jail officer on several occasions fondled Plaintiff's genitalia/genitals and buttocks, as well as snuck up behind him and grinded against plaintiff to the point where plaintiff felt defendant's genitals on his backside. 2012 WL 639310 at *7.  Broadus also alleged that the officer unsuccessfully pressured him to do sexual acts such as exposing himself and talking in a sexual manner to him.  *Id.*, at *7.  The Court granted defendants' motion to dismiss, holding in relevant part:

> "These allegations, although despicable if true, do not rise to the level of a federal constitutional harm. [citation omitted] Rather, Plaintiff's allegations of occasional inappropriate touching and solicitations are clearly more akin to the facts in *Escobar* and *Joseph*, where the plaintiffs' allegations were found to be insufficient under the objective prong of the Eighth Amendment inquiry."

*Id.*, at *7.

In *Escobar v. Reid*, the Court found Escobar's allegations that a prison guard groped his buttocks, asked Escobar to fondle his genitals, and passed a flat hand vertically up the crack of Escobar's buttocks, failed to describe treatment severe or depraved enough to state a constitutional violation.  668 F. Supp. 2d 1260, 1274, 1295–96 (D. Colo. 2009); *see also Hughes v. Smith*, 237 F. App'x 756, 759, 2007 WL 1885567 at *2 (3rd Cir. 2007) (inmate did not allege a constitutional violation where the correctional officer allegedly touched the inmate's testicles through his clothing during a single pat-down frisk); *Pantusco v. Sorrell*, 2011 WL 2148392 at *7–8 (D.N.J. 2011) (inmate's constitutional claim fails because a single instance of groping by a correctional officer during a pat-down frisk does not amount to cruel and unusual punishment); *Boddie v. Schnieder*, 105 F.3d 857, 860–61 (2nd Cir. 1997) (Boddie's allegations that a correctional officer verbally harassed him while touching his penis, bumped into Boddie "so hard [he] could feel the points of her nipples against [his] chest," and pinned him against a door, were not sufficiently serious or harmful to reach constitutional dimensions).

Importantly, Plaintiff's allegations in this case show that before force was applied against her, she had smeared peanut butter on her cell window, covered up the window with toilet paper to obstruct jail staff's view, and then refused to comply with directions to remove the toilet paper.[39]  Officers were simply taking Plaintiff from one cell and moving her to a safety cell for better monitoring by staff.   In this context—admitted by Plaintiff's allegations—Ms. Caranchini's allegations of sexual assault fail under the objective component.  If true, they are unquestionably reprehensible.  Regardless, the allegations are not sufficiently serious to rise to the level of a constitutional violation and should be dismissed.

   **b.   Subjective Component; Deliberate Indifference -** Plaintiff's sexual assault claims also fail under the subjective component of the Eighth Amendment.  To state a claim subjectively, Plaintiff must allege sufficient facts to show that a defendant had the culpable state of mind.  *Barney v. Pulsipher*, 143 F.3d at 1310; *Farmer*, 511 U.S. at 834.  Plaintiff's claim is deficient where she fails to name, identify or describe any individual deputy.  Consequently are no allegations to give rise to any plausible conclusion that any particular individual participated in, or personally knew of and intentionally disregarded a threat of serious harm to Plaintiff.  Dismissal of this claim is therefore appropriate for failing to set forth facts under the subjective prong.

   **4.   Detention Lighting -** Plaintiff alleges her rights were violated by being placed in a cell with bright lights, causing her migraines to get worse.[40]  Even assuming this allegation is true, it does not rise to the level of a Fourteenth Amendment violation.  The Tenth Circuit addressed a complaint of continuous lighting in *Murray v. Edwards Cty. Sheriff's Dep't*, 248 F. App'x 993, 998, 2007 WL 2827723, at *3-4 (10th Cir. 2007).  In *Murray*, the inmate

---

[39]  See footnote 36.
[40] Doc. 1-3, p. 34 ¶49; p. 43 ¶78(g); p. 44 ¶78(i); p. 57 ¶91.

claimed continuous lighting caused him headaches and sleep related problems. The Court concluded that continuous lighting within a cell during a short-term period of confinement, even in conjunction with other conditions, did not amount to a constitutional violation. *Id.*, at 998, 2007 WL 2827723 at *4 (citing *Gregory v. Wyse*, 512 F.2d 378 (10th Cir. 1975)). In *Gregory*, the Tenth Circuit affirmed dismissal by the Colorado district court. 512 F.2d at 382. It concluded that an inmate's confinement for at least ten days in a small cell with continuous lighting, in conjunction with other conditions (having only a cement slab for a bed, no bedding, two meals per day, and one shower per week) did not amount to a constitutional violation. *Id.*

In the present case, Plaintiff's allegation that she was subjected to continuous lighting while detained for thirty-six (36) hours is a *de minimus* level of imposition with which the Constitution is not concerned. This claim should be dismissed because it does not rise to the level of a constitutional violation.

### J.     Punitive Damages are not Recoverable Against Municipal Defendants

Plaintiff seeks unspecified punitive damages against the Detention Center, Hayden and the unnamed sheriffs.[41] It is well established that municipalities, or officials acting in their official capacities, are immune from the imposition of punitive damages in § 1983 cases. *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 266-67 (1981). Ms. Caranchini's request for punitive damages should be denied in its entirety.

Punitive damages are not intended to compensate an injured party, but rather to punish a wrongdoer whose action was intentional and malicious. *Id.* In the case of municipalities, punitive damages would have the effect of only punishing the taxpayers, who took no part in the wrongdoing, but would be required to cover the award. *Id.*, at 267. The Tenth Circuit, as well as courts in the District of Kansas, have held that requests for punitive damages against

---

[41] Doc. 1-3, p. 47 ¶81; p. 63 ¶101; p. 66 ¶109.

municipalities in § 1983 cases were prohibited.  *See, e.g., McKee v. Heggy*, 703 F.2d 479, 483 (10th Cir. 1983).  Similarly, punitive damages against a state municipal official acting in his official capacity are also barred.  *See Watson v. City of Kansas City, Kan.*, 185 F. Supp. 2d 1191, 1210 (D. Kan. 2001).

Plaintiff's relief for punitive damages should be denied in its entirety against these defendants.

### IV.      State Law Assault and Battery Claims – Statute of Limitations.

To the extent the Court construes Plaintiff's allegations that deputies "humped her sexually" and then dragged her out of her cell across the jail compound,[42] as a state law assault or battery claim, it should be dismissed as being filed outside the statute of limitations.

Plaintiff alleges this conduct occurred when she was detained between February 9, 2017 and February 10, 2017.[43]  K.S.A. §60-514(b) limits actions for assault or battery to one year.  To survive, these claims must have been filed no later than February 10, 2018.  This case was filed on February 6, 2019, any such assault or battery claims have expired and Plaintiff cannot now state a claim.

### V.      Injunctive Relief is Moot

In addition to monetary damages, Ms. Caranchini seeks wide-ranging injunctive relief against the Johnson County Detention Center concerning detention operations and district court procedures.[44]  Plaintiff bears the burden of establishing her entitlement to injunctive relief. *Kocsis v. Sedgwick Co. Kan.*, 2015 WL 3776507 at *5 (D. Kan. 2015). The relief should be denied in its entirety for mootness.

---

[42] See Footnote 38.
[43] Doc. 1-3, p. 7 ¶2; p. 8 ¶4;  p. 42 ¶78; p. 61 ¶97.
[44] Doc. 1-3, p. 48–54.

In order to establish standing for prospective injunctive relief, a plaintiff must demonstrate a realistic probability that he will be subjected to the same injurious conduct in the future. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983).  Prior conduct of the defendant and the subjective fear of a plaintiff are not dispositive. *Id.*, at 98, 105.  There must be a "real or immediate threat that the plaintiff would be wronged again." *Id.*, at 111.

In this case, Plaintiff alleges she eventually bonded out of jail.[45]  She alleges no facts to suggest she will be incarcerated a Jonson County detention center in the near future.  She does not have standing to seek injunctive relief.  *Kemmerly v. Herzet*, 2018 WL 1242072 at *2 (D. Kan. 2018) (citing *Wirsching v. Colorado*, 360 F.3d 1191, 1196 (10th Cir. 2004) (inmate's release moots claims for injunctive relief)).

Plaintiff makes no allegations establishing sufficient likelihood that she would be subjected to the same injurious conduct in the future.  She lacks standing and the Court should rightfully deny any prospective injunctive relief.

### III.    Conclusion

Plaintiff's claims should be dismissed as: (1) the Johnson County Detention Center cannot be sued; (2) Plaintiff cannot bring a vicarious liability claim against based solely on purported constitutional violations of subordinates; and (3) Plaintiff alleges claims against unnamed "sheriffs" and cannot now add or name individual officers. Dismissal of her underlying constitutional violations is also proper where Plaintiff has failed to adequately name, describe or identify any specific officer, or allege a plausible cause of action for any of her constitutional claims while she was detained.  Plaintiff is also beyond the statute of limitations and cannot maintain a state law claims for assault or battery.  Finally, she lacks standing for her proposed injunctive relief.

---

[45] Doc. 1-3, p. 36 ¶55; p. 38 ¶62.

FERREE, BUNN, RUNDBERG
& RIDGWAY, CHTD.

    s/  Kirk T. Ridgway
Kirk T. Ridgway   KS No. 17172
Alex S. Gilmore   KS No. 27334
*Attorneys for Defendants "Johnson County
Jail" and Sheriff Calvin Hayden*
9393 W. 110th Street, Suite 200
Overland Park, Kansas 66210
(p) (913) 381-8180 / (f) (913) 381-8836
kridgway@fbr2law.com
agilmore@fbr2law.com

### CERTIFICATE OF MAILING

I hereby certify that on the 15th day of February, 2019, I electronically filed the foregoing Memorandum in Support of Dismissal with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Gwendolyn G. Caranchini
1203 West 62nd Street
Kansas City, Missouri 64113
gwencaranchini@gmail.com

I further certify that I mailed the foregoing memorandum and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:

[N/A]

    s/  Kirk T. Ridgway
Kirk T. Ridgway

*I:\Shf  Caranchini, Gwen\Pleadings, Motions, Etc\( II) US D Kan. 19-2067\Memorandum in Support of Dismissal 021419*